Billie Gene HELLESON, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–98–410–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 4, 1999.

Rehearing Overruled Dec. 9, 1999.

**394**

Suzanne Hudson, Arlington, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Dist. Atty. and Chief of the Appellate Division, and David M. Curl, Jeff Stewart and Michele Audet, Asst. Dist. Attys., Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

A jury convicted Billie Gene Helleson, Jr. of the offense of retaliation and assessed punishment at seventy-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 36.06 (Vernon 1994 & Supp.1999). In three points, Helleson argues that the evidence is factually insufficient to support his conviction, that the trial court erred by refusing to instruct the jury on two lesser included offenses, and that the State made an improper jury argument. We will affirm.

On November 24, 1997, Officer Ron Turner of the Fort Worth Police Department arrested Helleson for aggravated assault. As Officer Turner handcuffed him and placed him in the patrol car, Helleson became extremely agitated and uncooperative. During the ten minute trip to the Tarrant County Jail, Helleson repeatedly threatened Officer Turner by stating that he was going to "blow [his f——] brains out" and "cut [his] heart out."

In his first point, Helleson argues that the evidence is factually insufficient to support the verdict. Specifically, he attacks the credibility of Officer Turner and

argues that the State never proved that he threatened Officer Turner because he was a police officer.

This court has the authority to review fact questions in criminal cases. *See Clewis v. State,* 922 S.W.2d 126, 129–30 (Tex. Crim.App.1996). In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.'" *Id.* at 129 (citing *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)). We may only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* In performing this review, we are to give "appropriate deference" to the fact finder. *Id.* at 136. We may not reverse the fact finder's decision simply because we may disagree with the result. *See Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Instead, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *See id.*

A person commits the offense of retaliation if he intentionally or knowingly threatens another by an unlawful act "in retaliation for or on account of the service of another as a ... public servant." Tex. Penal Code Ann. § 36.06(a)(1) (Vernon Supp.1999). Although police officers are not specifically enumerated within the statutory definition of "public servant," courts have interpreted the term to include police officers. *See Bryson v. State,* 807 S.W.2d 742, 745–46 (Tex.Crim.App.1991); *McCoy v. State,* 932 S.W.2d 720, 723 (Tex. App.—Fort Worth 1996, pet. ref'd); *Prevo v. State,* 778 S.W.2d 520, 525 (Tex.App.— Corpus Christi 1989, pet. ref'd).

■ The underlying purpose of section 36.06 is "to encourage a certain class of citizens to perform vital public duties without fear of retribution." *Morrow v. State,* 862 S.W.2d 612, 615 (Tex.Crim.App. 1993) (citing *Doyle v. State,* 661 S.W.2d 726, 729 (Tex.Crim.App.1983)). To support a conviction for the offense of retalia-

tion, the evidence must establish the retributory element found in section 36.06(a)(1), i.e., that the unlawful act was committed in retaliation for or on account of another person's service as a public servant. However, the defendant's retaliatory motivation may be shown by circumstantial evidence. *See Coward v. State,* 931 S.W.2d 386, 388 (Tex.App.—Houston [14th Dist.] 1996, no pet.).

In this case, the uncontroverted evidence establishes that Officer Turner initially picked up Helleson as a suspect in an aggravated assault. Helleson willingly accompanied Officer Turner to the complainant's address, where he was identified as the assailant. Officer Turner then informed Helleson that he was under arrest, handcuffed him, and placed him in the back seat of the patrol car. At this point, Helleson became angry and began to use profane language and threaten violence. It was only after Officer Turner exercised his authority as a peace officer that Helleson made repeated death threats. Given these circumstances, we believe that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Even if we were to accept Helleson's argument that Officer Turner's veracity had been "called into question," we must defer to the fact finder's assessment of a witness's credibility in evaluating the factual sufficiency of the evidence. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We overrule point one.

■ In his second point, Helleson contends the trial court erred by failing to instruct the jury on the lesser included offenses of terroristic threat and assault by threat.

■ A defendant is entitled to a charge on a lesser offense if the lesser offense is included in the proof necessary to establish the offense charged and if there is evidence in the record that, if the defendant is guilty, he is guilty only of the lesser offense. *See Miniel v. State,* 831 S.W.2d

310, 317 (Tex.Crim.App.), *cert. denied,* 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992); *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981) (op. on reh'g).

As set forth above, the offense of retaliation requires proof of a threat to harm a public servant in retaliation for and on account of the servant's public service. *See* Tex. Penal Code Ann. § 36.06. However, both the offenses of assault by threat and terroristic threat require proof that the person making the threat intended to place the victim in fear of *imminent* bodily injury. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.07(a)(2) (Vernon 1994).[1]

Because the offense of retaliation does not require that the threat to harm in retaliation for the victim's public service be imminent, the elements of assault by threat and terroristic threat are not included within the proof necessary to establish the offense of retaliation. *Compare* Tex. Penal Code Ann. § 36.06 *with* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.07(a)(2); *see also Coward,* 931 S.W.2d at 389; *Davis v. State,* 890 S.W.2d 489, 492 (Tex.App.—Eastland 1994, no pet.). We therefore conclude that assault by threat and terroristic threat are not lesser included offenses of retaliation and the trial court did not err by denying the requested charges. Point two is overruled.

In his third point, Helleson argues that the trial court erroneously allowed the State to make improper jury arguments during the punishment phase of the trial. He contends the State invited the jury to weigh the effects of parole law in deciding his punishment, causing the jury to award an excessive prison term. *See Kearney v. State,* 630 S.W.2d 934, 935 (Tex.Crim.App. [Panel Op.] 1982) (jury may not apply parole law to a particular defendant in determining a sentence).

Proper jury argument must fall into one of four general categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; and (4) plea for law enforcement. *See Cooks v. State,* 844 S.W.2d 697, 727 (Tex.Crim.App. 1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Mack v. State,* 872 S.W.2d 36, 39 (Tex.App.—Fort Worth 1994, no pet.). If argument is improper, however, the harm caused by the argument can almost always be cured. *See Faulkner v. State,* 940 S.W.2d 308, 312 (Tex.App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). Moreover, harm caused by improper comments on the applicability of parole law is curable if the court provides an instruction to disregard. *See Harwood v. State,* 961 S.W.2d 531, 543–44 (Tex.App.—San Antonio 1997, no pet.). Reversal is warranted only when, "in light of the record as a whole [the argument] was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused into the trial proceedings." *Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Crim.App. 1990) (citations omitted).

To preserve a complaint about improper jury argument, the defendant must: (1) object; (2) request an instruction to disregard; and (3) move for mistrial. *See Harris v. State,* 784 S.W.2d 5, 12 n. 4 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). Moreover, the defendant must object each time the impermissible argument is made, or else the complaint is waived. *See Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991). Even if the argument is egregious and an instruction to

---

1. § 22.01. Assault

(a) A person commits an offense if the person:

. . . .

(2) intentionally or knowingly threatens another with *imminent* bodily injury[.]

§ 22.07. Terroristic Threat

(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:

. . . .

(2) place any person in fear of *imminent* serious bodily injury[.]

*Id.* (emphasis supplied).

disregard would not cure the harm caused by the improper argument, it is waived if the defendant did not object. *See Valencia v. State,* 946 S.W.2d 81, 82–83 (Tex. Crim.App.1997) (op. on reh'g).

■ In this case, Helleson points to three instances where the prosecutor refers to parole law during the State's final argument. We will discuss each separately. The first reference to parole law comes after the prosecutor describes Helleson's three prior felony convictions and asks the jury to send a message to repeat offenders by returning a harsh sentence:

> [STATE:] And the question I want to ask you today: Is it worth the risk for the most important of your affairs, your family, to risk that he is going to get back out on the streets?

> You can't consider parole law as applied to this individual, but the Court's Charge does say this: That a person is eligible for parole when their actual time is one quarter of their sentence.

> [HELLESON'S COUNSEL:] Your Honor, if I may object at this point. The Court has instructed the jury not to consider parole law in any way with regard to this case, and the prosecutor is attempting to do that.

> THE COURT: All right. At this point, prosecutor has quoted the Charge. Anything beyond this I'll consider your objection and legal remedies based on what happens to this point forward. You're overruled to that statement only as a quote from the Charge.

> I will admonish the jurors, Court has set out the law about parole and what is not proper to consider, and I expect you to follow it.

Having reviewed the court's instructions to the jury during the punishment phase of the trial, we believe the prosecutor's com-

ment concerning parole law accurately summarizes the court's charge on parole.[2] Thus, we find that these remarks are proper argument. *See Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990) (it is acceptable to paraphrase the court's charge to the jury); *Jones v. State,* 641 S.W.2d 545, 550 (Tex.Crim.App. [Panel Op.] 1982) (no error in explaining parole law as found in court's charge).

■ Shortly after the prosecutor continued with his closing argument, he made a second statement concerning parole:

> [STATE:] Like I said before, and I prelude my statement with, don't consider how parole law will be applied to this Defendant. That's what this Charge says. But you can consider the existence of the parole law. That's also in the Court's Charge. And it says one-quarter. You can do the math. One quarter of 25 years.

> [HELLESON'S COUNSEL:] Your Honor, again, I'm going to object. He's applying specifically to this case, asking them to do the math.

> . . . .

> THE COURT: The objection is sustained.

> [HELLESON'S COUNSEL:] Your Honor, I ask the jury be instructed to disregard this prosecutor's comments.

> THE COURT: The jury will disregard the comment of you can do the math and the one quarter. The Court specifically said you can be aware of the law, but you are not to do the math, you are not to consider the parole law for any purpose in assessing a fair sentence.

> Does everyone remember that instruction?

> THE JURY: Yes.

> THE COURT: Can everyone follow that instruction?

> THE JURY: Yes.

---

**2.** The pertinent part of the court's charge reads, "[u]nder the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or 15 years, whichever is less."

Helleson's attorney then moved for a mistrial, which the trial court denied.

In its brief, the State concedes that the prosecutor's suggestion that the jury "do the math" was improper. We agree.[3] However, given the trial court's strong admonishment that the jury not consider parole law in assessing Helleson's punishment, we believe that the harm caused by the prosecutor's improper remark was cured and, therefore, the trial court did not err in refusing to grant a mistrial. *See Harwood,* 961 S.W.2d at 544.

The final reference to parole law comes at the conclusion of the State's argument where the prosecutor states, without objection:

> [STATE:] You may consider the existence of the parole law and good conduct time; however, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. It's in the Court's Charge. It's the law given to you by the Judge and he signed it and it's the law, okay? And you can take this back and read it yourselves.
>
> My point is this: 25 years might be life for this man, 30 years might be life for this man, 40 years may be life for this man, but with a record like that, why take the chance?
>
> It's time to send the message to Billie Helleson and nine stories of people and a whole building full down in Huntsville, and there is nothing less that this case deserves than life.

Shortly thereafter, the jury returned a sentence of seventy-five years. While this argument is clearly improper,[4] Helleson failed to object. He has, therefore, waived his right to challenge the argument on appeal. *See Kelley v. State,* 968 S.W.2d 395, 402–03 (Tex.App.—Tyler 1998, no pet.) (right to complain of impermissible

jury argument forfeited if appellant fails to continually object); *see also McFarland v. State,* 845 S.W.2d 824, 840 (Tex.Crim.App. 1992) (no reversible error when same argument is presented elsewhere in trial without objection), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). This result, however, should not be construed as condoning the State's conduct in this case, nor as an indication that such arguments, if repeated, will be tolerated in future appeals.

For the reasons discussed above, we overrule Helleson's third point and affirm the judgment of the trial court.

DAUPHINOT, J., filed a concurring opinion.

LEE ANN DAUPHINOT, Justice, concurring.

Although I concur in the result, I write separately to commend the State on candidly conceding that the prosecutor's suggestion that the jury "do the math" was improper. I also write to emphasize the majority's warning that our failure to reverse based on this improper argument should not be construed as condoning such jury argument.

---

**3.** We have admonished the State for the same "do the math" argument in prior unpublished decisions.

**4.** The argument is particularly disturbing because the offending prosecutor persisted in making a patently improper argument after having received a strong admonishment for making a similar argument earlier.